UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD WILLIAM NGABIRANO,<br><br>               Petitioner,<br><br>v.<br><br>WARDEN TIM WENGLER,<br><br>               Respondent. | Case No. 1:11-cv-00450-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Ronald William Ngabirano's Petition for Writ of Habeas Corpus (Dkt. 1). On March 19, 2013, the Court conditionally granted Respondent's Motion for Summary Dismissal after it concluded that Petitioner's habeas claims are procedurally defaulted. (Dkt. 28.) The Court declined to enter a final order of dismissal at that time, instead allowing the parties to submit additional briefing addressing whether *Maples v. Thomas*, 132 S. Ct. 912 (2012), should apply to excuse the procedural default of those claims. Additionally, the Court declined to decide whether *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), excused the default of Petitioner's ineffective assistance of trial counsel claims because the Supreme Court was considering the case of *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), which was ultimately dispositive of one of Respondent's arguments against the application of *Martinez* to Petitioner's claims.

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner has now filed a Motion to Proceed with Habeas Petition and Supplemental Brief (Dkt. 30). Both parties have filed their briefs, and the issue is ripe for adjudication.

Having fully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court shall decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order dismissing the Petition with prejudice.

## BACKGROUND

This case stems from Petitioner's sexual predation of several young children. Petitioner was a friend of a couple with children and sometimes stayed at their apartment. Petitioner would baby-sit the children in exchange for a place to stay. One day, the 6-year old girl living in the apartment told her stepfather that "Will" (the name used by Petitioner) had touched her inappropriately and that he had taken photographs. (State's Lodging A-4 at 227-28.) The stepfather then searched the room where Petitioner slept when he stayed over (a room shared with one of the couple's younger boys) and found 6 pairs of blood-soaked panties stuffed into Petitioner's work boots. The panties belonged to the little girl. (*Id*. at 229-30.) A later search of the room revealed a cell phone containing pictures of the little girl's genitalia, as well as pictures of her with Petitioner's penis in her mouth. (*Id*. at 239, 271-72.)

**MEMORANDUM DECISION AND ORDER - 2**

When Petitioner was arrested, police found that he had a list of names he had written. On this list was the little girl's name, as well as many others. Police later learned of other children who disclosed that Petitioner had sexually abused them. Many of those names were also on Petitioner's list. In one of Petitioner's interviews with police, a detective used that list to question Petitioner about other potential victims. (*Id*. at 273.) The night of Petitioner's arrest, he made several incriminating statements to the investigating detective after receiving *Miranda* warnings.

After Petitioner was appointed counsel, he requested another interview with the detective, who told him she could not talk to him because he had a lawyer. The detective later came back to interview Petitioner because Petitioner wrote a note requesting to speak to her without his lawyer. In this second interview, Petitioner made more incriminating statements, again after *Miranda* warnings were given. (State's Lodging A-1 at 65-68.)

Petitioner pleaded guilty in Idaho state court to three counts of lewd conduct with a child under the age of 16 and to one count of possessing sexually exploitative material. (State's Lodging A-1 at 77-82; State's Lodging A-2 at 1.) In exchange for the guilty plea, the State dismissed several additional counts involving yet more child victims. (*Id*.) The State also agreed not to seek a fixed life sentence, and it ultimately recommended a unified life sentence with 30 years fixed. (State's Lodging A-2 at 61.) The district court sentenced Petitioner to life imprisonment without the possibility of parole on each lewd

conduct count and to 10 years fixed for possession of sexually exploitative material. (State's Lodging A-1 at 98-100.) On direct appeal, Petitioner argued that his sentences were excessive under state law. The Idaho Court of Appeals affirmed the judgment of the lower court, and the Idaho Supreme Court declined to review the case. (State's Lodgings B-3, B-6, B-9.)

Petitioner next filed an application for postconviction relief in state district court, raising numerous claims, including claims of ineffective assistance of trial counsel, each with several sub-parts. (State's Lodging C-2.) The district court appointed an attorney for Petitioner, but other than enter an appearance and file a motion to unseal the presentence investigation report, counsel did nothing to move the case forward, and it sat idle for almost two years. (State's Lodging C-1.) Eventually, the State filed a motion for summary dismissal, to which Petitioner's counsel did not respond. (*Id*.) At the hearing on the State's motion, postconviction counsel agreed with the district court's characterization that he chose not to "contest what's in the brief filed by the State as far as the legal and factual evidence." (State's Lodging C-8 at 6.) After the court granted the State's motion and ordered the case dismissed, counsel informed the court that "the reason we didn't file a response was I—we concluded that under Rule 11 we would not really have anything to say. I think Rule 11 prohibits us from making arguments that are without legal merit." (*Id*.) No appeal was filed from the district court's decision. (State's Lodging C-1.)

Petitioner next filed his Petition for Writ of Habeas Corpus in this Court, alleging a

wide array of federal claims arising out of the state criminal process, including: (1) a violation of his right, as a foreign national, to consular access after his arrest under the Vienna Convention on Consular Relations; (2) a violation of the Eighth Amendment's prohibition on excessive bail, which allegedly resulted in Petitioner's not being able to retain counsel of his choice; (3) a biased judge; (4) prosecutorial misconduct; (5) ineffective assistance of trial counsel under a variety of theories, including counsel's alleged failure to investigate and argue (a) search and seizure issues, (b) issues related to Petitioner's confession, (c) Petitioner's inability to access the law library in the county jail, as well as (d) counsel's allegedly deficient advice about the plea agreement; (7) an involuntary guilty plea; (8) cruel and unusual punishment under the Eighth Amendment; and (9) ineffective assistance of counsel on direct appeal. (Attachment to Petition, Dkt. 1-1 at 1-26.)

Respondent filed a Motion for Summary Dismissal, arguing that Petitioner failed to properly exhaust his claims in the state courts, and because it was now too late to do so, the claims had to be dismissed as procedurally defaulted. (Dkt. 10.) The Court determined that all of Petitioner's claims were procedurally defaulted and conditionally granted Respondent's motion, but allowed the parties to submit supplemental briefing on whether cause and prejudice excuses the default under either *Maples v. Thomas* or *Martinez v. Ryan*.

**DISCUSSION**

1. **Standard of Law Governing Summary Dismissal**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus or claims contained in the petition when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." In such case, the Court construes the facts in a light most favorable to the petitioner. It is appropriate for the Court to take judicial notice of court dockets from state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006). Therefore, the Court takes judicial notice of the state court records lodged by Respondent on July 7, 2012, July 12, 2012, November 26, 2012, and January 29, 2013. (*See* Dkt. 8, 11, 19, 26.)

2. **Standard of Law for Procedural Default**

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court.

*Id.* at 847.

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts, as discussed directly above; or (3) when the Idaho courts have rejected a claim on an independent and adequate state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim is procedurally defaulted, a federal court cannot hear the merits of that claim unless the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default; or (2) a showing that a miscarriage of justice will occur if the claim is not heard, meaning that the state court proceedings have probably resulted in the conviction of someone who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Because Petitioner does not contend that he is actually innocent, the Court will address only cause and prejudice in this Order. (*See* Motion to Proceed, Dkt. 30.)

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate

that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). This cause cause and prejudice test was clarified in *Coleman*, 501 U.S. at 745, as a basis for excusing procedural default.

**3.     Abandonment by Postconviction Counsel under *Maples v. Thomas***

**A.     *Standard of Law***

Until relatively recently, the Supreme Court had long held that a criminal defendant generally bears the risk of error by postconviction counsel, and "[t]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default," though counsel's errors that rise to an independent constitutional violation may serve as cause. *Murray*, 477 U.S. at 486. More specifically, in *Coleman*, the Supreme Court found that because it had never held that there is a constitutional right to counsel in post-conviction matters, a claim of ineffective assistance of post-conviction counsel cannot excuse the petitioner's failure to raise a claim properly in state court. 501 U.S. at 753 ("We reiterate that counsel's ineffectiveness will constitute cause only if it is an independent

constitutional violation."). This general rule is based on the principle that the postconviction attorney is the agent of the petitioner. *See Towery v. Ryan*, 67. F.3d 933, 941 (9th Cir. 2012) ("A federal habeas petitioner—who as such does not have a Sixth Amendment right to counsel—is ordinarily bound by his attorney's negligence, because the attorney and the client have an agency relationship under which the principal is bound by the actions of the agent.").

However, twenty years later, the Supreme Court held that complete *abandonment* of a petitioner by a postconviction attorney—as opposed to the ineffective assistance of that attorney—can constitute cause for excusing the procedural default of habeas claims. *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012). In *Maples*, the attorneys representing the petitioner on postconviction review—out-of-state attorneys from a large law firm—left the firm while the postconviction petition was still pending in state court and took new jobs that precluded their representation of the petitioner. They did not notify Maples, take steps to procure the assistance of other attorneys to represent him, or move to withdraw as counsel of record. *Id.* at 916-17.

When the state court denied Maples's postconviction petition, the order was sent to the law firm, which returned the order to the court as undeliverable. Local counsel, who had helped the out-of-state attorneys obtain *pro hac vice* admission, took no action on the order, assuming that the out-of-state attorneys were handling the matter. Thus, the deadline to appeal the denial of the state postconviction petition came and went, without

the petitioner having any idea that he could no longer rely on his attorneys to file that appeal.

The *Maples* Court held that the *Coleman* rule—that an attorney's errors during postconviction proceedings are attributable to the client under agency principles—does not apply when the petitioner's postconviction attorneys have effectively severed the attorney-client relationship without notice to the client. *Id.* at 922-23. Although it held the attorneys' abandonment of Maples constituted cause for excusing the procedural default, the Court did not disturb the requirement that the petitioner also show prejudice stemming from the default. *Id.* at 927-28 (remanding for a prejudice determination).

### B.    *Application of* **Maples** *to Petitioner's Procedural Default*

A petitioner seeking to use *Maples* to excuse the procedural default of an underlying habeas claim must make a prima facie showing of a severance of the attorney-client relationship. Such a severance occurs if postconviction counsel abandons the petitioner without notice to the client or permission by the court to withdraw as counsel of record. *See Maples*, 132 S. Ct. at 922-23; *Moormann v. Schriro*, 672 F.3d 644, 647 (9th Cir. 2012); *Mackey v. Hoffman*, 682 F.3d 1247, 1253 (9th Cir. 2012). A serious breach of loyalty may also sever the attorney-client relationship, but a mere "failure to raise a colorable habeas claim" does not "amount to a serious breach of loyalty that severs the attorney-client relationship. *Towery*, 673 F.3d at 942.

Here, Petitioner has failed to make a prima facie showing of a severance of the

attorney-client relationship. Although postconviction counsel had minimal contact with Petitioner and did not file a response to the State's motion to dismiss Petitioner's state postconviction petition, he did appear at the hearing on Petitioner's behalf and stated his reasons for not responding. Failing to move the case forward for two years, not responding in writing to a motion to dismiss, and having poor communication with Petitioner "may be a claim of serious negligence, but it is not 'abandonment.'" *Moorman*, 672 F.3d at 648. Further, Petitioner has not established that postconviction counsel committed a breach of loyalty so serious that it can be considered termination of the agency relationship. For these reasons, *Maples* does not apply to excuse the procedural default of Petitioner's habeas claims.

**4.    Ineffective Assistance of Postconviction Counsel under *Martinez***

The Court's conclusion that Petitioner was not abandoned by his postconviction attorney does not end the cause and prejudice inquiry. Petitioner also argues that his postconviction counsel was ineffective in failing to investigate his claims of ineffective assistance of counsel at trial and on direct appeal.

**A.    *Standard of Law***

Again, the general rule from *Coleman* is that ineffective assistance of postconviction counsel cannot constitute cause to excuse a procedural default. *Coleman* left for another day the question of whether a limited exception may exist when a post-conviction proceeding represents the first opportunity under state law for a convicted state

defendant to litigate claims of ineffective assistance of trial counsel. 501 U.S. at 755. In 2012, after issuance of the *Maples v. Thomas* decision, the Supreme Court answered that question and recognized another "narrow exception" to the *Coleman* rule, holding that ineffective assistance of post-conviction counsel—while not stating a constitutional claim itself—can be a sufficient equitable reason, or a "cause," to excuse defaulted claims of ineffective assistance of trial counsel. *Martinez*, 132 S. Ct. at 1315.

   *Martinez* established a limited exception to the *Coleman* rule and held that inadequate assistance of postconviction review (PCR) counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."[1] 132 S. Ct. at 1315. In *Nguyen v. Curry*, 736 F.3d 1287, 1293 (9th Cir. 2013), the Ninth Circuit extended *Martinez*, holding that it can apply to excuse the procedural default not only of claims of ineffective assistance of trial counsel (IATC), but also ineffective assistance of *appellate* counsel (IAAC).

   The *Martinez* exception[2] applies only to the ineffectiveness of PCR counsel in the

---

[1] Respondent asserts that Petitioner cannot benefit from *Martinez* because Petitioner's argument that postconviction counsel was ineffective "is itself procedurally defaulted." (Response to Petitioner's Motion to Proceed, Dkt. 31, at 3.) However, the Court has already rejected the argument that a *Martinez* "cause" argument based on ineffective assistance of postconviction counsel must itself be properly exhausted. (Dkt. 28 at 8 n.2.)

[2] *Martinez* applies only if the underlying ineffective assistance of counsel claim is exhausted (no further avenue of state court relief is available) and procedurally defaulted (an adequate and independent state procedural ground for the default exists). If the new claim is unexhausted and not procedurally defaulted, then the petitioner may be able to return to state court to assert the claim under the stay-and-abey procedure. *See Rhines v. Weber*, 544 U.S. 269 (2005).

**MEMORANDUM DECISION AND ORDER - 12**

initial postconviction review proceeding as potential cause in the cause and prejudice

analysis. It "does not extend to attorney errors in any proceeding beyond the first occasion

the State allows a prisoner to raise a claim of ineffective assistance at trial." *Id.* at 1320.

Rather, the *Martinez* Court was singularly concerned that, if ineffective assistance of trial

counsel claims were not brought in the collateral proceeding which provided the first

occasion to raise such claims, the effect was that the claims could not be brought *at all.*

*See* 132 S. Ct. at 1316. Therefore, a petitioner may not use as cause attorney error that

occurred in "appeals from initial-review collateral proceedings, second or successive

collateral proceedings, and petitions for discretionary review in a State's appellate

courts." 132 S. Ct. at 1320.

In *Trevino v. Thaler*, the United States Supreme Court described the *Martinez* test

as consisting of four requirements or prongs:

> We consequently read *Coleman* as containing an
> exception, allowing a federal habeas court to find "cause,"
> thereby excusing a defendant's procedural default, where (1)
> the claim of "ineffective assistance of trial counsel" was a
> "substantial" claim; (2) the "cause" consisted of there being
> "no counsel" or only "ineffective" counsel during the state
> collateral review proceeding; (3) the state collateral review
> proceeding was the "initial" review proceeding in respect to
> the "ineffective-assistance-of-trial-counsel claim"; and (4)
> state law requires that an "ineffective assistance of trial
> counsel [claim] . . . be raised in an initial-review collateral
> proceeding."

133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318-19, 1320-21)

(alterations in original).

**MEMORANDUM DECISION AND ORDER - 13**

Thus, as a necessary first prong for the *Martinez* exception to apply, a petitioner must bring forward some facts demonstrating that his ineffective assistance of counsel (IAC) claim is substantial. The United States Supreme Court has defined "substantial" as a claim that "has some merit." *Martinez*, 132 S. Ct. at 1318 (comparing the standard for certificates of appealability from *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Stated inversely, a claim is "*in*substantial" if "it does not have any merit or . . . is wholly without factual support." *Id.* at 1319.

Determining whether an IAC claim is substantial requires a federal district court to examine the claim under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting

> effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time. Because of the
> difficulties inherent in making the evaluation, a court must
> indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance;
> that is, the defendant must overcome the presumption that,
> under the circumstances, the challenged action might be
> considered sound trial strategy. There are countless ways to
> provide effective assistance in any given case. Even the best
> criminal defense attorneys would not defend a particular
> client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of which evidence to present or which

arguments to make, "are virtually unchallengeable" if "made after thorough investigation

of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an

attorney who decides not to investigate a particular theory or issue in the case is not

ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete
> investigation are reasonable precisely to the extent that
> reasonable professional judgments support the limitations on
> investigation. In other words, counsel has a duty to make
> reasonable investigations or to make a reasonable decision
> that makes particular investigations unnecessary. In any
> ineffectiveness case, a particular decision not to investigate
> must be directly assessed for reasonableness in all the
> circumstances, applying a heavy measure of deference to
> counsel's judgments.

*Id.* at 690-91.

If a petitioner shows that counsel's performance was deficient, the next step is the

prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96.

These standards from *Strickland* for determining deficient performance and prejudice, are, of course, the standards for an eventual review of the merits of the underlying IAC claim. The first *Martinez* prong is not the same as a merits review; rather, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining whether a certificate of appealability should issue. *See Martinez*, 132 S.Ct. at 1318-19. Therefore, a court may conclude that a claim is substantial when a petitioner has shown

that "resolution" of the merits of the *Strickland* claim would be "debatable amongst jurists of reason" or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted). Thus, the first prong of *Martinez* requires the district court to *review* but not *determine* whether trial counsel's acts or omissions resulted in deficient performance and in a reasonable probability of prejudice, and to *determine* only whether resolution of the merits of the claim would be debatable among jurists of reason and whether the issues are deserving enough to encourage further pursuit of them.

A second necessary prong of *Martinez* is a showing that the petitioner had no counsel on initial PCR review, or that PCR counsel was "ineffective under the standards of *Strickland*." 132 S. Ct. at 1318; *see Trevino*, 133 S. Ct. at 1918. "Ineffectiveness" is a term defined by *Strickland* as deficient performance and a reasonable probability of prejudice caused by the deficient performance. 466 U.S. at 694, 700.

As to deficient performance, not just any error or omission of PCR counsel will be deemed "deficient performance" that will satisfy *Martinez*; if the PCR "attorney in the initial-review collateral proceeding did not perform below constitutional standards," the PCR attorney's performance does not constitute "cause." 132 S. Ct. at 1319. The *Strickland* standards for analyzing deficient performance set forth above apply with equal force to PCR counsel in the context of a *Martinez* argument.

As to prejudice, in *Detrich v. Ryan*, ___ F.3d ___, 2013 WL 4712729, at *6 (9th

Cir. 2013) (en banc) (plurality opinion), a plurality of judges concluded that "[a] prisoner need not show actual prejudice resulting from his PCR counsel's deficient performance, over and above his required showing that the trial-counsel IAC claim be 'substantial' under the first *Martinez* requirement." Those judges reasoned:

> If a prisoner who had PCR counsel were required to show prejudice, in the ordinary *Strickland* sense, resulting from his PCR counsel's deficient performance in order to satisfy the second *Martinez* requirement, the prisoner would have to show, as a condition for excusing his procedural default of a claim, that he would succeed on the merits of that same claim. But if a prisoner were required to show that the defaulted trial-counsel IAC claims fully satisfied *Strickland* in order to satisfy the second *Martinez* requirement, this would render superfluous the first *Martinez* requirement of showing that the underlying *Strickland* claims were "substantial"—that is, that they merely had "some merit." *See Martinez*, 132 S.Ct. at 1318-19.

*Id*.

## B. *Application of* **Martinez** *to Petitioner's Procedural Default*

Because the *Martinez* exception applies only to ineffective assistance of counsel claims, the only defaulted claims to which it might apply are Claims 5 (ineffective assistance of trial counsel) and 7 (ineffective assistance of direct appeal counsel). After a thorough review of the record, the Court concludes that Petitioner is unable to show that Claim 5 or 7 is substantial.

### i. Claim 5: IATC

Petitioner identifies various ways in which his trial counsel was allegedly

ineffective; he claims that trial counsel failed to (a) competently address the issue of search and seizure and thereby obtain suppression of evidence; (b) competently address his confessions to law enforcement and thereby obtain suppression of those confessions; (c) fight for Petitioner's right to access a law library while in jail; and (d) explain the plea agreement sufficiently, rendering Petitioner's guilty plea involuntary and unknowing.

Petitioner's first three claims can be disposed of without elaborate discussion. The record shows that trial counsel moved to suppress the panties and cell phone found in the room used by Petitioner, as well as the list of names found on Petitioner himself. He argued several grounds to challenge the admission of that evidence, but the trial court denied the motion. (State's Lodging A-4 at 326-335.) The court also denied, after extensive argument, counsel's motion to exclude Petitioner's two confessions. (*Id*. at 290-310; State's Lodging A-1 at 69-72.) That the trial court did not accept counsel's arguments does not mean that counsel performed deficiently. Further, Petitioner has not alleged any facts supporting a conclusion that he was prejudiced by his inability to access legal materials before and during trial. Thus, these three IATC claims are insubstantial.

Petitioner's claims regarding his counsel's advice and actions with respect to the plea agreement warrant further discussion. To show prejudice based on deficient performance of counsel in a case where the defendant pleaded guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S.

52, 59 (1985).

Petitioner argues that trial counsel was ineffective because he "convinced the petitioner to change his plea by making promises that were outside his authority, by failing to disclose every detail of the plea agreement, . . . by never fully and correctly explaining the full ramifications of what a guilty plea would entail," and by not "lock[ing] in" the prosecutor's recommended sentence by entering into a binding plea agreement. (Pet., Dkt. 1-1, at 10.) Petitioner states that counsel promised him that the judge would follow the prosecutor's recommendation as to sentencing and that he "would not have pleaded guilty if properly informed that the penalty of doing so would be <u>exactly</u> the same as if he exercised [sic] his right to go to trial and possibly receive a more favorable outcome." (Motion to Proceed, Dkt. 30 at 4.)

The Idaho criminal justice system allows for several types of plea agreements. In exchange for a guilty plea, the prosecutor may "(A) move for dismissal of other charges; or (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or (C) agree that a specific sentence is the appropriate disposition of the case; or (D) agree to any other disposition of the case." Idaho Crim. R. 11(f)(1). A plea agreement under Rule 11(f)(1)(C), where the prosecutor agrees to a specific sentence, is binding on the sentencing court to the extent that if the court rejects the plea agreement, the defendant has a right to withdraw his guilty plea. Idaho R. Crim.

P. 11(f)(4). However, a prosecutor does not have to agree to a specific sentence. Instead, he or she may agree to make a particular *recommendation* of sentence, or promise not to recommend a particular sentence, and leave the actual sentencing decision up to the trial judge. *See* Idaho Crim. R. 11(f)(1)(B). In such a case, the defendant has no right to withdraw his guilty plea even if the judge decides not to accept the recommended sentence.

This case deals with the latter type of plea agreement. The prosecutor agreed not to recommend fixed life, and she stood by that promise, recommending a unified sentence of life with 30 years fixed. The sentencing court, however, was not bound by that recommendation. Petitioner argues that his counsel was ineffective in failing to enter into a binding plea agreement pursuant to Rule 11(f)(1)(C), which would have allowed him a chance to withdraw his plea if the judge rejected the agreed-upon sentence.

Petitioner's IATC claim with respect to the non-binding nature of his plea agreement is not substantial because it is merely speculative. No prosecutor is required to enter into a binding plea agreement, and there is no evidence showing that the prosecutor either offered or would have accepted a specific sentence that would be binding on the court, especially given that such an agreement permits a defendant to withdraw his plea if the judge refuses to impose the sentence agreed upon and given the alarming number of incidents for which Petitioner was charged. Further, Petitioner has presented no evidence that he would have preferred or fared better after a jury trial—where he would be facing

not four, but twelve charges and, if found guilty, would have been subjected to the possibility of multiple fixed life sentences in any event. There is no doubt that any later relief Petitioner might seek—such as a commutation of sentence—would be much less likely if Petitioner had been convicted of twelve counts instead of only four. Thus, Petitioner cannot show that (1) trial counsel performed deficiently in not obtaining a binding plea agreement, or (2) that Petitioner was prejudiced by the lack of such an agreement.

As to counsel's alleged promises that the judge would not exceed the recommended sentence and alleged failure to inform Petitioner that he could receive life in prison without the possibility of parole, the transcript of Petitioner's plea colloquy shows unequivocally that Petitioner knew full well the potential consequences of his plea. The plea agreement allowed the prosecutor to use the dismissed counts in aggravation at sentencing, and the prosecutor and defense counsel confirmed that specific agreement in open court, with Petitioner present. (State's Lodging A-2 at 2.) Before accepting Petitioner's plea, the court engaged him in the following discussion:

| The Court: | Let me go through some things with you, Mr. Ngabirano, before I take your pleas here today. What's binding on the court would be the dismissal of Counts 2, 3, 5, 6, 7, 8, 9, and 12. If those are dismissed, they are dismissed. *The state has indicated that they may bring in, potentially, victims to testify before the court at a sentencing on those.* But as far as those charges are concerned, they are dismissed, and you would no longer be held accountable for those. Do you understand that? |
|---|---|

| The Defendant: | Yes, sir. |
|---|---|

. . . .

| The Court: | Now, the state has made a sentencing promise here that they would not seek a fixed life sentence in this case. Do you remember hearing that? |
|---|---|
| The Defendant: | Yes. |
| The Court: | Now the judge is not—this court is *not bound by that*. Do you understand that? |
| The Defendant: | I know. |
| The Court: | In this case, *the court could sentence you to prison for the rest of your natural life*. Do you understand that? |
| The Defendant: | Yes. |
| The Court: | *Even if the state says they're not recommending that, the court has that authority still*. Do you understand that? |
| The Defendant: | Yes. |
| The Court: | Did you have any questions of your lawyer at this time? |
| The Defendant: | No. |
| The Court: | Mr. Ngabirano, this is an important decision in your life. Do you need more time to think about this and to confer with family or your attorney, for that matter? |
| The Defendant: | No. |

(*Id*. at 4-6) (emphasis added).

As this colloquy reveals, Petitioner was under no illusion that his plea agreement

provided for a specific sentence or that the dismissed conduct could not be used by the prosecution at sentencing. He did not plead guilty in exchange for anything like that. Rather, he pleaded guilty in exchange for the prosecution's agreement not to *recommend* fixed life and to dismiss the many other charges against him. Petitioner got precisely what he bargained for. The judge specifically informed Petitioner that, although the other counts would be dismissed, the state was allowed to introduce evidence of that conduct for sentencing purposes, and that the judge had the authority to disregard the prosecutor's recommendation and sentence him to life without the possibility of parole.

Petitioner cannot show that he would not have pleaded guilty if counsel had advised him any differently than he did, because Petitioner went into the sentencing proceedings with his eyes wide open and he gained a substantial advantage by the dismissal of eight other charges. After the trial court denied the motions to suppress the evidence seized from one of the victim's homes and the list of names seized from Petitioner's person, the guilty plea may well have been Petitioner's best option.

It is easy to look back, in hindsight, and conclude that Petitioner would not have pleaded guilty if he had known his sentence "would be" fixed life. (Motion to Proceed at 4.) What matters is that Petitioner did know, because of the judge's statements to him, that he *might* receive a fixed life sentence, and he chose to plead guilty anyway in the reasonable hope that the judge would choose a lesser sentence. This was a rational decision, and Petitioner made it knowing all the relevant information. That Petitioner

ultimately received the harshest sentence possible does not render his counsel ineffective under the Sixth Amendment.

For these reasons, Petitioner does not have a substantial claim that he was prejudiced by any error on the part of trial counsel, and *Martinez* does not excuse the default of his IATC claims.

      ii.     <u>Claim 7: IAAC</u>

Plaintiff also claims that his counsel on direct appeal performed deficiently by failing to "inform the petitioner of his right to file a pro se supplemental brief, or give him notice and opportunity to do so. The result is that the appellate court was never presented with certain additional reviewable errors contained within this petition which may result in their being procedurally barred." (Pet. at 24.)

The *Strickland* principles apply to IAAC claims just as they do to IATC claims. To show prejudice on appeal, a petitioner must show that his appellate attorney failed to raise an issue obvious from the trial record that probably would have resulted in reversal. *See Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989). If a petitioner does not show that an attorney's act or omission would have resulted in reversal, then he cannot satisfy either prong of *Strickland*: appellate counsel was not ineffective for failing to raise such an issue, and petitioner suffered no prejudice as a result of that failure. *Id.* at 1435.

The right to effective legal assistance does not mean that appellate counsel must appeal every question of law or raise every nonfrivolous issue requested by a criminal

defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "[N]othing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Id*. at 754. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52.

Petitioner has not shown that anything he might have written in a supplemental appellate brief would probably have resulted in reversal. Appellate counsel raised Petitioner's strongest argument—that three sentences of fixed life, plus 10 years fixed on the child pornography count, were excessive. Appellate counsel reasonably determined that the excessive sentencing claim was the best chance for Petitioner to obtain relief, and the decision not to raise weaker claims does not establish that Petitioner's appellate counsel was ineffective.

Petitioner's IAAC claim—like his IATC claim—is not substantial, and therefore *Martinez* does not apply to excuse the procedural default of this claim.

## CONCLUSION

Having reviewed all of the submissions by both parties, the relevant case law, and the entire record before it, the Court concludes that Petitioner is not excused from the procedural default of any of the claims in his Petition. Therefore, the Petition will be dismissed with prejudice.

# ORDER

**IT IS ORDERED:**

1.    Petitioner's Motion to Proceed with Habeas Petition (Dkt. 30) is DENIED.

2.    The Court's conditional grant (Dkt. 28) of Respondent's Motion for Summary Dismissal (Dkt. 10) is hereby CONFIRMED, and this entire action is DISMISSED with prejudice.

3.    The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED:  **February 7, 2014**

Honorable B. Lynn Winmill
Chief U. S. District Judge